# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| Robert Raymond Tingue, | No. CV-25-08177-PCT-DWL (ASB) |
| Petitioner, | **REPORT AND RECOMMENDATION** |
| v. | |
| Ryan Thornell, et al., | |
| Respondents. | |

**TO THE HONORABLE DOMINIC W. LANZA, UNITED STATES DISTRICT JUDGE:**

Petitioner Robert Raymond Tingue ("Petitioner"), who is confined in the Red Rock Correctional Center, has filed a Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2254 (Doc. 1).[1] For the reasons that follow, undersigned will recommend that the Petition be denied and dismissed.

## PROCEDURAL HISTORY

### I. State Proceedings

#### A. Facts

The Arizona Court of Appeals (hereinafter "Court of Appeals") summarized the facts and procedural history as follows:[2]

---

[1] Citation to the record indicates documents as they are displayed in the District of Arizona's official Court electronic document filing system under Case No. CV-25-08177-PCT-DWL (ASB).

[2] The Arizona Court of Appeals' recitation of the facts is presumed correct. *See* 28 U.S.C. § 2254(d)(2), (e)(1); *Runningeagle v. Ryan*, 686 F.3d 758, 763 n.1 (9th Cir. 2012) (rejecting

In September 2017, Arizona Department of Transportation ("ADOT") workers conducting an inspection of traffic lights in Prescott Valley discovered multiple pole boxes with their lids off and a total of 15,440 feet of copper wire missing from the boxes. Remnants of cut wire, screwdrivers, and wire cutters were left on the ground. The total amount of financial harm to ADOT for the theft was $11,772.72, which included the cost of repair and $7,778.50 for parts.

In November 2017, ADOT workers found more pole boxes open with a total of 4,879 feet of copper wire missing. The damage in November was "[p]retty much the same as the first scenario," with pole boxes "ripped apart" and their lids "thrown everywhere or missing." The workers observed a suspicious vehicle, a small blue pickup truck driving on the shoulder of the road and gave police the license plate number. ADOT paid $3,663.32 in repair costs following the November theft. This amount did not include the cost for replacement wire. The total loss for the November incident was approximately $18,000.

Upon investigation, police discovered that Tingue sold 6,000 feet of copper wire at a scrap yard in September 2017. Tingue had driven the blue pickup truck, which belonged to his neighbor, Kenny Wade, to the scrap yard. Twice in early 2018, Tingue asked Wade and Wade's fiancé, Jennifer Wright, to sell copper wire for him in Phoenix. They each did so once and Tingue paid them. When contacted by police, Wade told them Tingue had used his truck to steal copper wire. Wade and Wright each pleaded guilty to theft charges based on their sale of copper wire for Tingue.

Police contacted Tingue at his residence and he consented to a search. Police found two meth pipes in Tingue's room.

The State charged Tingue with two counts of theft, class 3 felonies (counts 1 and 4); two counts of criminal damage, class 4 felonies (counts 2 and 5); two counts of first-degree trafficking in stolen property, class 2 felonies (counts 3 and 6); and one count of possession of drug paraphernalia, a class 6 felony (count 7). The State filed an allegation of aggravating

argument that statement of facts in state appellate court's opinion should not be afforded the presumption of correctness which may be rebutted only by clear and convincing evidence).

- 2 -

> circumstances and an allegation of prior felony convictions.
>
> At trial, Tingue moved for directed verdicts of acquittal on all counts except count 7. *See* Ariz. R. Crim. P. ("Rule") 20(a)(1). The superior court denied the motion, and a jury convicted Tingue as charged. The jury was not asked to determine whether there were any aggravating factors.
>
> Later, at a bench trial on Tingue's prior convictions, the superior court found that Tingue had two prior historical felony convictions after he stipulated to the convictions. A few months later, the superior court sentenced Tingue as a category three repetitive offender to a slightly aggravated sentence of 15.75 years in prison for count 1 and to presumptive sentences for counts 2-7. The court ordered Tingue to serve counts 1 through 6 concurrently with count 7 to be served consecutive to counts 1-6.

(Doc. 14-1 at 6-7.)

### B.  Direct Appeal

On May 28, 2020, Petitioner filed a Notice of Appeal. (Doc. 14-1 at 14-15.) On December 21, 2020, Petitioner, through counsel, filed his Opening Brief in the Arizona Court of Appeals. (*Id.* at 23-54.) He presented three issues on appeal:

> 1. Whether Defendant was sentenced to an illegal slightly aggravated term for Count 1 when no findings of aggravating factors were found in violation of A.R.S. § 13-703(K).
> 2. Whether the evidence was sufficient for Count 2 Criminal Damage and Counts 4-6 to the theft of the copper wire in November of 2017.
> 3. Whether the trial court erred in denying Defendant's Rule 20 motion for judgment of acquittal for Counts 2, 4, 5, and 6 made at the close of the prosecution's case.

(*Id.* at 27.) The State filed an Answering Brief, arguing that Petitioner's sentence and convictions should be affirmed, with the exception of Count 5 which they conceded should be reduced to a Class 5 felony (rather than Class 4 felony) and remanded for resentencing. (*Id.* at 56-84.) On June 15, 2021, the Court of Appeals affirmed Petitioner's convictions

and sentences for counts 1-5 and 7, and reversed his conviction and vacated his sentence for count 6. (*Id.* at 5-12.) The Court of Appeals found for count 1 that because Tingue's sentence was within the authorized statutory range once the court found two prior felony convictions, there was no error in imposing a sentence greater than the presumptive but less than the maximum sentence. (*Id.* at 9.) For counts 2, 4, and 5, the Court of Appeals found there was sufficient evidence for a jury to convict petitioner. (*See id.* at 10-11.) For count 6, the Court of Appeals reversed the conviction and sentence on the grounds that there was insufficient evidence that Tingue trafficked ADOT's property in November 2017 and thus insufficient evidence to support a conviction. [3] (*Id.* at 11-12.) Petitioner did not file a motion for reconsideration or petition for review of the Court of Appeals' decision, and the Court of Appeals issued its Mandate on August 6, 2021. (*Id.* at 3.)

### C.    State Post-Conviction Relief Proceeding

Petitioner initiated his first Post-Conviction Relief proceeding in Yavapai Superior Court on July 12, 2021. (Doc. 14-1 at 90.) Petitioner alleged under Rule 32.1(e) that newly discovered material facts probably exist, and those facts probably would have changed the judgment or sentence. (*Id.* at 91.) On July 22, 2021 the Superior Court stayed the PCR proceedings until the conclusion of Petitioner's Direct Appeal, because the Mandate from the Court of Appeals had not yet been issued. (*Id.* at 105.) On August 13, 2021, the Superior Court issued an Order lifting the stay in Petitioner's Rule 32 proceeding, appointing counsel, and issuing a scheduling order for the post-conviction relief proceedings.[4] (*Id.* at 107-108.) Petitioner then filed his Petition for Post-Conviction Relief Under Rule 32 ("PCR Petition") on September 23, 2022, arguing that newly discovered evidence existed that entitled Petitioner to a new trial. (*Id.* at 110-115.) Petitioner, through counsel, argued

---

[3]    Undersigned could not locate an argument in Petitioner's Direct Appeal regarding count 3 (*see* Doc. 14-1 at 23-54) nor a discussion of count 3 in the Court of Appeals' Memorandum Decision (*see* Doc. 14-1 at 6-12). Nevertheless, count 3 was affirmed by the Court of Appeals. (*See* Doc. 14-1 at 12.)

[4]    The Superior Court also dismissed the request for Post-Conviction Relief for a separate matter, case number P1300CR201801442, in its Order. (Doc. 14-1 at 107.) Because the matter being challenged presently corresponds with Superior Court case number P1300CR201800699, undersigned will not discuss the Superior Court matter ending 1442. (*See* Doc. 1 at 1; Doc. 1-2 at 21, 27, 30; Doc. 14-1 at 5, 14, 16, 23, 56, 86, 110.)

that two witnesses came forward after Petitioner's sentencing and appeal who, even with due diligence, Petitioner would not have been able to find. (*Id.* at 113.) Petitioner also argued that the facts alleged by these newly discovered witnesses were significant and material to the case, as they directly contradicted the State and a reasonable jury may have acquitted Petitioner based on these witnesses' testimony. (*Id.* at 114.)

The State filed a Response to Petitioner's PCR Petition, arguing that Petitioner failed to demonstrate that newly discovered evidence existed that would probably change the verdict, pursuant to Rule 32(e). (Doc. 14-2 at 3-8.) The State argued that Petitioner failed to show he pursued the information in a timely manner, that the information is material, and that if the evidence were introduced it would probably have changed the verdict. (*Id.* at 8.) Petitioner filed a Reply to the State's Response. (*Id.* at 11-12.)

The Superior Court issued an Order on November 21, 2022 finding that Petitioner's PCR Petition presented material facts sufficient to warrant a hearing. (Doc. 14-2 at 14.) An evidentiary hearing was held on September 18, 2023 to address the claim of newly discovered evidence, with Petitioner's counsel present in the courtroom and Petitioner appearing remotely via the TEAMS videoconferencing platform. (*Id.* at 16; Doc. 14-3 at 39.) During the evidentiary hearing, Petitioner presented one witness for testimony, Brian Sheppard[5]. (Doc. 14-2 at 16.) Petitioner also requested to examine a witness who was not previously disclosed to the State, which the Court denied. (*Id.* at 17.) Following the testimony of Petitioner's witness, the Court stood at recess due to the TEAMS program shutting down. (*Id.*) After the return from recess, all parties reconvened with the exception of Petitioner, whose counsel waived his appearance for the rest of the hearing. (*Id.*) Both the State and Petitioner's counsel then presented closing argument, and the matter was taken under advisement. (*Id.*)

The Superior Court issued a ruling on September 27, 2023 denying Petitioner's PCR Petition. (Doc. 14-2 at 19.) The Court held that, after reviewing the witness testimony and

---

[5] The Evidentiary Hearing minutes refer to the witness as "Brian Shepherd" but other documents, including a notarized affidavit from the witness, spell the witness' name as "Brian Sheppard." (*See* Doc. 14-2 at 16; Doc. 14-1 at 123.)

exhibits, it could not find by a preponderance of the evidence that Petitioner provided any new material evidence that, if introduced at trial, would probably change the verdict if a new trial was ordered. (*Id.* at 20.) The Court reasoned that Sheppard's testimony was not reliable because it was riddled with unverified hearsay statements from witnesses not present at the hearing and Sheppard admitted to being biased towards Petitioner. (*Id.* at 19.)

### D. Petitioner's State Proceedings After PCR Evidentiary Hearing

Petitioner filed an Objection & Motion for Appearance by Defendant to Testify to Complete Evidentiary Hearing on October 5, 2023, requesting that the Superior Court order an Evidentiary Hearing with Petitioner present and able to testify. (Doc. 14-2 at 22.) The State Responded in opposition to Petitioner's Motion, to which Petitioner filed a Reply. (Doc. 14-3 at 14-17, 19-37.) Petitioner also filed a Notice to Court & Request for Appointment of Counsel on November 13, 2023 requesting that the Superior Court appoint new counsel for Petitioner and "schedule the completion of the Evidentiary Hearing." (*Id.* at 3-7.)

On December 20, 2023, the Superior Court issued an Order overruling Petitioner's objection to his inability to testify or be present for the end of the evidentiary hearing and denying his Motion for appointment of counsel. (Doc. 14-3 at 39.) The Court reasoned that Petitioner was only absent for the evidentiary hearing after "[t]he defense had rested its presentation of evidence and testimony." (*Id.*) The Court also concluded that "[Petitioner] could not have anticipated testifying at the hearing" because "[Petitioner] was not noticed as a witness prior to the hearing." (*Id.*) Finally, the Court found that there were no further matters remaining at issue in Petitioner's case and thus Petitioner was not entitled to appointment of counsel. (*Id.*)

Following the Superior Court's Order, Petitioner filed a Petition for Review pursuant to Ariz. R. Crim. P. 32.16(a)(1) and (c) on January 8, 2024. (Doc. 14-3 at 42.) Petitioner requested that the Arizona Court of Appeals review the Superior Court's December 20, 2023 ruling. (*Id.*) Petitioner presented five issues for review:

> 1. Was Defendant deprived of his Constitutional Rights to be

present and/or testify at the Evidentiary Hearing?
2. Was the Evidentiary Hearing perfected and completed?
3. Was the evidence insufficient for a Constitutionally valid conviction?
4. Was P.C.R. counsel ineffective?
5. Was Defendant prejudiced?

(*Id.* at 46.) The State filed a Notice of Acknowledgement to Petitioner's filing on January 23, 2024, but did not substantively file a response to Petitioner's Petition for Review. (Doc. 14-4 at 55.) Petitioner also filed a pleading to the Court of Appeals entitled "Newly Discovered Undisclosed 'Brady' – Rule 12.1 Material Submitted as Evidence (A.R.E. Rule 902, et. seq.) of Suborned Perjury" on May 17, 2024. (*Id.* at 3-42.) The Court of Appeals categorized this filing as a Motion to Supplement, and summarized the Motion as Petitioner requesting the Court of Appeals to "take judicial notice of facts contained in news reports published in 2017" which were recently discovered by Petitioner. (*Id.* at 44-45.) The Court of Appeals denied Petitioner's Motion to Supplement on the grounds that Petitioner may not present issues or evidence on review that was not first presented to the Superior Court. (*Id.*) Petitioner then filed an Objection & Request for Reconsideration to Order Denying Motion to Supplement on May 30, 2024 (*id.* at 47-51), which the Court of Appeals denied (*id.* at 53).

On December 3, 2024, the Court of Appeals granted review but denied relief of Petitioner's Petition for Review. (Doc. 14-4 at 60-62.) The Court of Appeals found that Petitioner did not provide a transcript of the PCR evidentiary hearing, and thus presumed that the missing portions of the record supported the trial court's findings. (*Id.* at 62.) The Court of Appeals also reasoned that insufficiency of evidence was not a ground for relief under Ariz. R. Crim. P. 32.1. (*Id.*) Finally, the Court of Appeals found that Petitioner had no constitutional right to counsel in a post-conviction proceeding and thus no claim under Rule 32 for ineffective assistance of PCR counsel. (*Id.*)

Petitioner then filed a Motion for Reconsideration on December 16, 2024 requesting that the Court of Appeals reconsider its December 3 denial of relief. (Doc. 14-5 at 3-30.) Petitioner also filed a Supplement Motion for Reconsideration and Evidence Submitted for

the Record and to Preserve Issues for Appeal(s) on December 30, 2024. (*Id.* at 32-59.) The Court of Appeals denied these Motions. (*Id.* at 61-62.) Petitioner filed a Petition for Review in the Arizona Supreme Court on January 15, 2025. (*Id.* at 64-115.) Petitioner raised nineteen[6] grounds for review. (*Id.* at 66-68.) These were:

> A. Issues Decided Presented for Review
>   1. Memorandum Decision of 12-03-2024
>        a. Court found that defense has rested before the connection was lost.
>        b. Petitioner failed to attach transcript of the Evidentiary Hearing so the Court assumes that the record supports the trial court's finding.
>        c. Petitioner could not have testified.
>        d. Insufficient evidence is not ground for relief under Rule 32.
>        e. Petitioner cannot claim ineffective assistance of counsel for Rule 32.
>   2. Order of 01-06-2025 – Court denied "Petitioner's Motion for Reconsideration."
>   3. Order of 07-18-2024 – Court will take no action regarding the letter from Brian Sheppard (defense witness who was testifying when the call was lost).
>   4. Order of 06-04-2024 – Court denied Motion to Reconsider order denying Petitioner's Motion to Supplement Record.
>   5. Order of 05-21-2024 – Court denied "Motion to Supplement."
> B. Issues Undecided but Presented
>   6. Court allowed State to not present copies of State filings to Petitioner.
>   7. Court denied Petitioner right to proceed pro se after counsel withdrew.
>   8. Court allowed State to use contrived false evidence, and/or altered government documents to obtain the improvident conviction.
>   9. Lack of "Restitution" filings evidences there was no loss, or the A.D.O.T. employees were the actual culprits.
>   10. State witness Lopez committed perjury.
>   11. Court did not allow Petitioner to impeach State witnesses

---

[6]  Petitioner lists seventeen numbers, but two of those listed are subparts of another. (Doc. 14-5 at 66-68.)  Thus, for purposes of this Report and Recommendation, the Court will consider all nineteen grounds listed.

and/or evidence.

12. Evidence was insufficient for a conviction, as it relates to Petitioner's claims of "actual innocence."

13. Petitioner was prejudiced by being deprived of his Constitutionally protected substantive rights throughout the whole of the matter.

14. Court did not rule on the admission of Petitioner's Offer of Proof and/or the evidence incorporated by reference.

15. "Newly Discovered . . ." (5-14-2024) – Court did not rule on the evidence, but instead just denied the pleading.

(*Id.*) (cleaned up). The Arizona Supreme Court denied Petitioner's Petition for Review on April 7, 2025. (*Id.* at 117.)

### E.  Summary of State Matters Preceding the Instant Federal Petition

In summary, Petitioner filed a Direct Appeal of his conviction in the Court of Appeals, which was granted in part and denied in part. (Doc. 14-1 at 3-15, 23-84.) Petitioner then filed a PCR Petition in Superior Court, which was initially granted an evidentiary hearing on the issue of newly discovered evidence and subsequently denied on the merits. (Docs. 14-1 at 90-131; 14-2 at 3-20.) Petitioner also filed several motions with the Superior Court, all of which were denied. (Docs. 14-2 at 22-31; 14-3 at 3-40.) Petitioner submitted a Petition of Review to the Court of Appeals (Doc. 14-3 at 42-133), in addition to filing several other motions with the Court of Appeals (Docs. 14-4 at 3-42, 47-51; 14-5 at 3-59) all of which were denied (Docs. 14-4 at 44-45, 53, 58-62; 14-5 at 61-62). Finally, Petitioner petitioned for review to the Arizona Supreme Court, which was summarily denied. (Doc. 14-5 at 64-117.)

### II.    Instant Federal Proceeding

On August 28, 2025, Petitioner filed a Petition for Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254 (Doc. 1)[7]. In the Petition, Petitioner raises seven claims

---

[7]    Neither Petitioner nor Respondents address the timeliness of the Petition. (*See* Docs. 1, 14, 15.) Because the Petition on its face appears timely and Respondents have not argued otherwise, undersigned will not analyze the issue of timeliness in this Report and Recommendation. (*See* Doc. 7 at 3-4) ("The failure to set forth an affirmative defense regarding a claim in an answer may be treated as a waiver of the defense as to that claim, *Day v. McDonough*, 547 U.S. 198, 209-11 (2006)").

for relief. (*Id.*) The Court summarizes the claims as follows:

(1) In Ground One, Petitioner asserts the State suborned perjury by a police officer during trial, in violation of the Fourteenth Amendment.

(2) In Ground Two, Petitioner contends the trial court abused its discretion by depriving Petitioner of effective cross-examination and confrontation, in violation of the Sixth and Fourteenth Amendments.

(3) In Ground Three, Petitioner claims he is actually innocent and was convicted based on the State's "complete deprivation" of his right to a fair trial, in violation of the Fourteenth Amendment.

(4) In Ground Four, Petitioner asserts he received ineffective assistance of counsel at trial, in violation of the Sixth Amendment.

(5) In Ground Five, Petitioner contends he was denied the right to testify on his own behalf when the trial court did not allow him to testify during the evidentiary hearing on Petitioner's petition for post-conviction relief.

(6) In Ground Six, Petitioner contends he was denied due process under the Fourteenth Amendment because he was convicted with insufficient and altered evidence and suborned perjury.

(7) In Ground Seven, Petitioner claims he was denied due process under the Fourteenth Amendment and compulsory process under the Sixth Amendment at his state PCR evidentiary hearing, because he was deprived of the right to testify by the court.

(*See* Doc. 1; Doc. 7 at 1-2.) Respondents filed a Motion for Extension of Time to File Answer to Petition for Writ of Habeas Corpus (First Request) (Doc. 10), to which Petitioner filed a Response in opposition (Doc. 11), and Respondents filed a Reply (Doc. 12). After this Court granted Respondents' Motion for Extension of Time (Doc. 13), Respondents timely filed their Limited Answer to Petition for Writ of Habeas Corpus on December 22, 2025 (Doc. 14). In their Answer, Respondents asserted that Petition's claims are either procedurally defaulted or not cognizable. (Doc. 14.) Petitioner filed a lengthy Reply on December 30, 2025, repeating many of the arguments made in his Petition and raising new arguments regarding his habeas corpus petition. (Doc. 15.)

//

- 10 -

**ANALYSIS**

The writ of habeas corpus affords relief to persons in custody pursuant to the judgment of a state court in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. §§ 2241(c)(3), 2254(a). Petitions for habeas corpus are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). 28 U.S.C. § 2244.

## I.    Applicable Law

### A.  Exhaustion

To seek federal habeas review, a state prisoner must also exhaust the available state remedies. 28 U.S.C. § 2254(b)(1)(A).  To exhaust state remedies, a petitioner must afford the state courts the opportunity to rule upon the merits of his federal claims by "fair[ly] present[ing]" them "in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing *Duncan v. Henry*, 513 U.S. 364, 365-366 (1995); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)). In other words, proper exhaustion requires a petitioner to "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Date v. Schriro*, 619 F. Supp. 2d 736, 762 (D. Ariz. 2008) (quoting *O'Sullivan*, 526 U.S. at 845).

Under controlling case law, fair presentment of a claim requires a court to engage in a two-prong analysis. *See Rose v. Palmateer*, 395 F.3d 1108, 1111 (9th Cir. 2005). First, a court must consider whether the petitioner invoked "one complete round" of the state's established review process for any claim raised on federal habeas review. *See O'Sullivan*, 526 U.S. at 845. The court then must determine whether the petitioner pled the federal nature of the claim with "considerable specificity" before the state courts. *See Rose*, 395 F.3d at 1111; *see also Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005) (holding "[a] petitioner fairly and fully presents a claim to the state court for purposes of satisfying the exhaustion requirement if he presents the claim: (1) to the proper forum, (2) through the proper vehicle, and (3) by providing the proper factual and legal basis for the claim")

(internal citations omitted).

### 1.  Proper Forum and Proper Vehicle

"To exhaust state remedies, a petitioner must afford the state courts the opportunity to rule upon the merits of his federal claims by 'fairly presenting' them to the state's 'highest' court in a procedurally appropriate manner." *Date*, 619 F. Supp. 2d at 762 (first quoting *Castille v. Peoples*, 489 U.S. 346, 349 (1989); then quoting *Baldwin*, 541 U.S. at 29). In non-capital cases arising in Arizona, the "highest court" requirement is satisfied by fair presentation to the Arizona Court of Appeals either on direct appeal or in a petition for post-conviction relief. *Date*, 619 F. Supp. 2d at 762 (citing *Crowell v. Knowles*, 483 F. Supp. 2d 925 (D. Ariz. 2007)). Thus, claims from Arizona state prisoners "are exhausted for purposes of federal habeas once the Arizona Court of Appeals has ruled on them." *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999). However, "to exhaust a habeas claim, a petitioner must properly raise it on every level of direct review." *Casey v. Moore*, 386 F.3d 896, 916 (9th Cir. 2004) (citations omitted). This means that a petitioner who raises federal claims for the first and only time to the state's highest court does not fairly present the claims. *Id.* at 918.

"To exhaust one's state court remedies in Arizona, a petitioner must first raise the claim in a direct appeal or collaterally attack his conviction in a petition for post-conviction relief pursuant to Rule 32." *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994); *see also Castillo v. McFadden*, 399 F.3d 993, 997-1000 (9th Cir. 2005) (analyzing claims raised on direct appeal where state prisoner directly appealed but did not pursue PCR proceedings in state court). Only one of these avenues of relief in state court must be exhausted before bringing a habeas petition in federal court. *Brown v. Easter,* 68 F.3d 1209, 1211 (9th Cir. 1995); *Turner v. Compoy*, 827 F.2d 526, 528 (9th Cir.1987), *cert. denied*, 489 U.S. 1059 (1989). However, "[s]ubmitting a new claim to the state's highest court in a procedural context in which its merits will not be considered absent special circumstances does not constitute fair presentation." *Roettgen*, 33 F.3d at 38 (citing *Castille*, 489 U.S. at 351).

//

### 2. Specificity of Federal Basis

In addition to presenting his claims to the proper court and via the proper vehicle, a state prisoner must fairly present his claims to the state court by describing both the operative facts and the federal legal theory on which his claims are based. *See Date*, 619 F. Supp. 2d at 764; *Baldwin*, 541 U.S. at 33; *Duncan*, 513 U.S. at 365-66 (holding petitioners must fairly present federal claims to state courts in order to give the state the "opportunity to pass upon and correct" alleged violations of federal rights, which requires petitioners to alert the state courts that they are asserting claims under the federal Constitution) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)).

In the Ninth Circuit, petitioners "must make the federal basis of the claim explicit either by specifying particular provisions of the federal Constitution or statutes, or by citing to federal case law. While the petitioner must refer to federal law in state court explicitly, exhaustion is satisfied once the petitioner makes that explicit reference even if the petitioner relies predominantly on state law before the state courts." *Insyxiengmay*, 403 F.3d at 668 (internal citations omitted); *see also Picard*, 404 U.S. at 278 (holding fair presentation of a claim in state courts requires petitioners to present the state courts with the "substantial equivalent" of the claim raised in federal court). To exhaust his claim, Petitioner "must have presented his federal, constitutional issue before the Arizona Court of Appeals within the four corners of his appellate briefing." *Castillo*, 399 F.3d at 1000 (citing *Baldwin*, 541 U.S. at 32).

### 3. Procedural Default

A federal habeas claim is not exhausted if the petitioner still has the right to raise the claim "by any available procedure" in the state courts. 28 U.S.C. § 2254(c). "A habeas petitioner's claims may be precluded from federal review in either of two ways." *Date*, 619 F. Supp. 2d at 765. A claim may be procedurally defaulted in federal court if: (1) "it was actually raised in state court but found by that court to be defaulted on state procedural grounds[,]" or (2) "a state prisoner failed to present his federal claims to the state court, but returning to state court would be 'futile' because the state courts' procedural rules, such as

- 13 -

waiver or preclusion, would bar consideration of the previously unraised claims." *Id.* (internal citations omitted). An "express" procedural bar exists if the state court denies or dismisses a claim based on a procedural bar "that is both 'independent' of the merits of the federal claim and an 'adequate' basis for the court's decision." *Harris v. Reed*, 489 U.S. 255, 260 (1989) (citing *Fox Film Corp. v. Muller*, 296 U.S. 207, 210 (1935); *Murdock v. City of Memphis*, 87 U.S. 590, 635-636 (1875)). Federal courts are barred from reviewing claims that were decided on independent and adequate state law grounds. *See Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). "This rule applies whether the state law ground is substantive or procedural." *Id.* at 729 (citations omitted).

An implied procedural bar can occur when a claim was not actually exhausted in state court, but the petitioner no longer has an available state remedy. *Date*, 619 F. Supp. 2d at 766; *see also Robinson v. Schriro,* 595 F.3d 1086, 1100 (9th Cir. 2010). "Generally, any claim not previously presented to the Arizona courts is procedurally barred from federal review because any attempt to return to state court to properly exhaust a current habeas claim would be 'futile.'" *Van Norman v. Schriro*, 616 F. Supp. 2d 939, 949 (D. Ariz. 2007), *aff'd*, 362 F. App'x 597 (9th Cir. 2010) (citations omitted). A claim may be "futile" in Arizona based on waiver, preclusion, or timeliness. *See* Arizona Rules of Criminal Procedure 32.1(b)-(h), 32.2(a) & (b), 33.1 (b)-(h), 32.4(a) & (b).

If a petitioner failed to exhaust his claim and is now procedurally barred from returning to state court to present his claim, then his claim is procedurally defaulted and barred from federal habeas corpus review. *See Coleman*, 501 U.S. at 735 n.1 (citations omitted). A petitioner can overcome procedural default, and thus bar of his claim, only by showing cause for the default and resulting prejudice or that a fundamental miscarriage of justice will result from the denial. *Id.* at 750.

### B.  Cognizability

28 U.S.C. § 2254(a) provides that a federal court may issue a writ of habeas corpus to a state prisoner "only on the ground that he is in custody in violation of the Constitution, laws, or treaties of the United States." "In conducting habeas review, a federal court is

limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) (citations omitted). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Id.* at 67-68. "A habeas petition must allege the petitioner's detention violates the constitution, a federal statute, or a treaty." *Franzen v. Brinkman*, 877 F.2d 26, 26 (9th Cir. 1989) (citations omitted). "We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'" *Estelle*, 502 U.S. at 67 (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)).

## II.    Analysis

At the outset, undersigned will address the state court filings that have been properly presented. *See* 28 U.S.C. § 2254(b)(1)(A). The only vehicles by which Petitioner properly "presented" his claims in state court for purposes of federal habeas corpus review were: (1) his Direct Appeal (Doc. 14-1 at 3-15, 23-84); (2) his Petition for Review to the Court of Appeals (Doc. 14-3 at 42-133); and (3) his Petition for Review to the Arizona Supreme Court (Doc. 14-5 at 64-117). *See Roettgen*, 33 F.3d at 38; *Castille*, 489 U.S. at 351 (presenting a claim for state review in the procedural context, outside of the direct appeal or Rule 32 petition, does not constitute proper "presentment"). While Petitioner filed several other motions attacking his conviction in state court (*see* Docs. 14-2 at 22-31; 14-3 at 3-40; 14-4 at 3-42, 47-51; 14-5 at 3-59), these were either outside of the Rule 32 or direct appeal process, or Petitioner did not seek appellate review (*see* Doc. 14-1 at 90-95)[8] and thus were not "fairly presented" to the Arizona state courts. *See Roettgen*, 33 F.3d at 38. Therefore, any arguments made in motions outside of the three aforementioned documents will not be considered as properly presented to the Arizona state courts and

---

[8]    Petitioner did not seek appellate review of the substantive claims in his PCR Petition filed in Superior Court, but rather filed a Petition for Review in the Court of Appeals that raised different grounds for challenging his conviction. (*Compare* Doc. 14-1 at 90-95 *with* Doc. 14-3 at 42-133). Therefore, the PCR Petition presented only in Superior Court (Doc. 14-1 at 90-95) has not reached the proper forum and the arguments made therein will not be analyzed under exhaustion. *See Baldwin,* 541 U.S. at 32 ("[A] state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so."); s*ee also Castillo*, 399 F.3d at 1000.

- 15 -

therefore not discussed below.

### 1. Grounds One and Two

Petitioner's arguments in Grounds One and Two are similar, and thus the Court will consider them together. Petitioner argues in Ground One of his Petition that the State deprived Petitioner of due process under the Fourteenth Amendment by suborning perjury by a police officer, who testified during Petitioner's trial to a recorded call that was never played aloud for the jury. (Doc. 1 at 6.) Petitioner avers that he was also denied his Sixth Amendment right to confrontation and effective cross examination. (*Id.* at 6, 22-23.) Petitioner argues that his conviction was based on falsified evidence and that he was not involved in the crime he was convicted of. (*Id.*) In Ground Two, Petitioner argues that he was deprived of due process by the "trial judge's prejudicial abuse of discretion that deprived Petitioner of effective cross-examination and [c]onfrontation, under the Fourteenth and Sixth Amendments." (*Id.* at 7.) Petitioner avers that the trial judge abused his discretion by allowing the State to violate "the [r]ule against [h]earsay and place a non-existent confession into the record[] through suborned perjury by a police officer." (*Id.*) Petitioner also claims that he presented the issues raised in Grounds One and Two to the Arizona Court of Appeals via his "First petition" and to the Arizona Supreme Court. (*Id.* at 6-7.)

Respondents argue that Grounds One and Two should be dismissed because Petitioner did not allege any Fourteenth or Sixth Amendment violations in his PCR petition, and his perjury allegations about the police officers testimony were "mentioned for the first time in his [Reply brief to the State's Opposition to Petitioner's 'Objection & Motion for Appearance by Defendant to Testify to Complete Evidentiary Hearing' to the Superior Court]." (Doc. 14 at 14-15.) Respondents argue that Petitioner thus failed to exhaust Grounds One and Two of his Petition because he did not fairly present to each appropriate state court or through the proper review process (i.e. he presented through discretionary review). (*Id.*) Respondents aver that Petitioner cannot return to state court to properly exhaust the claims, and that his claims in Grounds One and Two are thus

technically exhausted but procedurally defaulted. (*Id.* at 15.)

For Grounds One and Two, Petitioner either did not raise the claims in his petitions in state court or failed to cite to the federal Constitution or federal laws in his petitions in state court. Petitioner did not raise any argument regarding due process, right of confrontation, or right of cross examination on his direct appeal. (*See* Doc. 14-1 at 23-54.) While Petitioner did argue in his Petition for Review to the Court of Appeals that "the testimonial evidence used to convict was perjurious[,]" he did not cite to any errors in federal law. (*See* Doc. 14-3 at 58-60.) Similarly, in his Petition for Review to the Arizona Supreme Court, Petitioner argues that "state witness Lopez committed perjury" and that "Court did not allow Petitioner to impeach State witnesses and/or evidence." (Doc. 14-5 at 67.) Although Petitioner does argue he was "deprived of his Constitutionally protected substantive rights[,]" this is insufficient to alert state courts as to the federal nature of his claims. *See Duncan*, 513 U.S. at 365-66. Petitioner therefore failed to "make the federal basis of the claim explicit either by specifying particular provisions of the federal Constitution or statutes, or by citing to federal case law" for either of Grounds One or Two. (*See* Doc. 1); *see Insyxiengmay*, 403 F.3d at 668. Petitioner either did not raise the issues in Grounds One and Two on appeal (*see* Doc. 14-1 at 23-54) or did not raise a federal issue when he presented it to the state courts (*see* Doc. 14-3 at 58-60; Doc. 14-5 at 67).

Furthermore, even if Petitioner did properly raise one of the issues in one of his state court petitions, he must have fairly presented it to *each level* of direct review in state court for proper presentment. *See Casey*, 386 F.3d at 916 (emphasis added). Petitioner therefore has failed to demonstrate that he has properly presented the issues raised in Grounds One and Two to state court. Because Petitioner can no longer raise these grounds in state court, as they are either time-barred or precluded, these claims are technically exhausted but procedurally defaulted. *See Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002) (finding that petitioner's unexhausted claims were procedurally defaulted, "because he is now time-barred under Arizona law from going back to state court") (citation omitted).

//

2. <u>Ground Three</u>

Petitioner argues in Ground Three of his Petition that he is actually innocent and was convicted based on the State's complete deprivation of Petitioner's right to a fair trial, in violation of the Fourteenth Amendment. (Doc. 1 at 8.) Petitioner raises several alleged errors and "felonious acts" which together obtained "the improvident conviction by tricking the jury" including: (1) suborned perjury by a police officer; (2) allowing uncorroborated hearsay testimony of a confession; (3) using falsified government documents; (4) suppressing material evidence that exculpates Petitioner and impeaches the State's case and witnesses; (5) depriving Petitioner of effective assistance of counsel in violation of the Sixth Amendment "and Article II § 24[;]" (6) depriving Petitioner of his substantive right to Compulsory Process to call witnesses on his behalf, including himself. (*Id.* at 8, 33-37.) Petitioner avers that he presented the issues raised in Ground Three to the Arizona Court of Appeals in his first petition and to the Arizona Supreme Court. (*Id.* at 8.)

Respondents assert that Ground Three of the Petition should be dismissed because it is not cognizable on habeas review. (Doc. 14 at 7.) Specifically, Respondents argue that the Supreme Court has never recognized factual innocence as a free-standing constitutional claim, and that thus the claim is non-cognizable. (*Id.*)

While Respondents are correct that the Ninth Circuit has not recognized free-standing innocence claims as cognizable on habeas review, *see Jones v. Taylor*, 763 F.3d 1242, 1246 (9th Cir. 2014), Petitioner's assertion in Ground Three includes several references to federal constitutional violations in conjunction with his assertion of innocence. (*See* Doc. 1 at 8, 33-37) (referring to Fourteenth and Sixth Amendment[9] violations) Therefore, undersigned rejects Respondents' argument that Ground Three is not cognizable because it is a "free-standing" innocence claim. (*See* Doc. 14 at 7.)

Nonetheless, the Court concludes Ground Three (that he is actually innocent and was convicted based on violations of his Fourteenth Amendment rights) was not properly presented in state court. As discussed *supra*, Petitioner must have presented this issue via

---

[9]    Petitioner's alleged Sixth Amendment claims will be discussed *infra*.

each level of the state court review process, meaning to least the Superior Court and Court of Appeals, through the proper vehicle, meaning on direct appeal or through a Rule 32 petition, and must have alleged federal law violations in order for the claim to be properly "presented." *See Insyxiengmay*, 403 F.3d at 668. Here, Petitioner did not raise any arguments of actual innocence or deprivation of Fourteenth Amendment rights in his direct appeal. (*See* Doc. 14-1 at 23-54.) While Petitioner did reference in his Petition for Review in the Court of Appeals that he is "actually innocent[,]" he did not allege this is conjunction with any federal law violation. (*See* Doc. 14-3 at 64.) Similarly, in his Petition for Review in the Arizona Supreme Court, Petitioner argued that he was "actually innocent[,]" Petitioner did not connect this allegation with any "particular provisions of the federal Constitution or statutes[.]" (*See* Doc. 14-5 at 72-74); *see Insyxiengmay*, 403 F.3d at 668. Because Petitioner did not explicitly connect his claims of actual innocence to federal law in any of his state court petitions, he did not properly present Ground Three in state court. *See Date*, 619 F. Supp. 2d at 764. Petitioner is now time-barred from bringing his claims in state court, and therefore his claim in Ground Three is technically exhausted but procedurally defaulted. *See id.; see Van Norman*, 616 F. Supp. 2d at 949.

### 3. Ground Four

In Ground Four of his Petition, Petitioner argues that he was deprived of his Sixth Amendment right to effective assistance of counsel. (Doc. 1 at 9.) He asserts that "trial counsel refused to call any witnesses; subject the state's case to any adversarial testing, object to unlawful hearsay testimony; play the jailhouse call recording to impeach Detective Lopez; allow Petitioner to testify on his own behalf; question the state's use of false documents; and/or provide any defense at trial." (*Id.*) Petitioner argues that if counsel had done "even the diminimus [*sic*] work of listening to the recording and arguing to submit such as evidence for the jury to hear" the jury would have ruled differently. (*Id.* at 38-39.) Petitioner asserts, by selecting the boxes on the Petition for Writ of Habeas Corpus form, that he did not present the issue raised in Ground Four to the Arizona Court of Appeals, but curiously also selected the box that indicates he did present the issue in a First petition

- 19 -

for Review to the Arizona Court of Appeals. (*Id.* at 9.) Petitioner also asserts that he presented the issue in Ground Four to the Arizona Supreme Court. (*Id.*)

Respondents argue in their Answer that Ground Four is technically exhausted but procedurally defaulted because Petitioner did not fairly present the claim of ineffective assistance of counsel in his PCR Petition or Petition for Review to the Court of Appeals. (Doc. 14 at 13.) Therefore, according to Respondents, Petitioner failed to fairly present the claims, and cannot return to state court to properly exhaust the claims in Ground Four. (*Id.*)

Undersigned agrees with Respondents. Petitioner did not argue in either his direct appeal or his Petition for Review to the Arizona Supreme Court any ineffective assistance of trial counsel claims. (*See* Docs. 14-1 at 23-54; 14-5 at 64-79.) While Petitioner did assert in his Petition for Review in the Court of Appeals that he was prejudiced and deprived of his Constitutionally protected rights, including his right to "Effective Assistance of Trial and PCR Counsel" pursuant to the Sixth Amendment, (*see* Doc. 14-3 at 62), this assertion was among a long list of alleged constitutional violations and intertwined with other claims. In this claim, Petitioner listed at least fifteen alleged federal or state violations arising from his trial, without expanding or describing these violations to the Arizona Court of Appeals. (*Id.* at 62-63.) This can hardly be considered a "fair presentation" of his federal claims that gave the Arizona Court of Appeals the "opportunity to pass upon and correct" alleged violations of federal rights. *See Duncan*, 513 U.S. at 365-66; *see also Date*, 619 F. Supp. 2d at 762 ("Fair presentation requires a petitioner to describe both the operative facts and the federal legal theory to the state courts.") (citing *Reese*, 541 U.S. at 28); *see also Castillo*, 399 F.3d at 1003 ("Exhaustion demands more than drive-by citation, detached from any articulation of an underlying federal legal theory.")

Even assuming, *arguendo*, that Petitioner did raise Ground Four in his Petition for Review of his PCR Petition to the Court of Appeals (Doc. 14-3 at 62), Petitioner must have raised this Ground at each level of the state review process. *See Casey*, 386 F.3d at 916, 918 (holding that to properly exhaust a claim a petitioner must raise a claim on every level of direct review, and may not raise a claim for the first and only time to the state's highest

- 20 -

court). Petitioner did not raise any such claim in his PCR Petition before Superior Court. (*See* Doc. 14-1 at 90-95.) Therefore, Petitioner has failed to exhaust his claim in Ground Four in state court. Because Petitioner can no longer return to state court to exhaust his claim, Petitioner's Ground Four allegations are technically exhausted but procedurally defaulted. *See Date*, 619 F. Supp. 2d at 764.

### 4. Ground Five and Seven

Undersigned will consider Grounds Five and Seven together as the claims raised are almost identical. (*See* Doc. 1 at 10, 12.) Petitioner asserts in Ground Five that he was deprived of his right to testify on his own behalf "per the Sixth Amendment" when the PCR Court held the evidentiary hearing but did not allow Petitioner to testify. (Doc. 1 at 10.) Petitioner pleads that the call was "'lost' on the court's side of the call and the court refused to accept Petitioner's repeated calls to the court." (*Id.*) In Ground Seven, Petitioner argues that he was denied due process of law under the Fourteenth Amendment and compulsory process under the Sixth Amendment in the PCR evidentiary hearing. (*Id.* at 12.) Petitioner asserts that he "made it abundantly clear" that he had invoked his right to testify in the evidentiary hearing, and because Petitioner was not permitted to testify, Petitioner was not able to rebut the testimony presented at trial. (*Id.*) Petitioner argues that he could have proven and established a factual basis for his claims, which would entitle him to relief, if the court had "allowed" Petitioner to testify. (*Id.* at 45.) Petitioner further avers that he presented the issues raised in Grounds Five and Seven to the Court of Appeals via a first petition for review and to the Arizona Supreme Court. (*Id.* at 10, 12.)

Respondents argue that the claims raised in Ground Five and Ground Seven are not cognizable on habeas review because there is no constitutional right to effective assistance of PCR counsel. (Doc. 14 at 7-8.)

Petitioner's claims in Grounds Five and Seven dispute the fairness and constitutionality of the evidentiary hearing held in PCR Court. (*See* Doc. 1 at 10, 12.) However, the Ninth Circuit has consistently held that "federal habeas relief isn't available to redress alleged errors in state post-conviction proceedings." *Carriger v. Stewart*, 95 F.3d

755, 763 (9th Cir. 1996) (citations omitted) (*vacated on other grounds in Carriger v. Stewart*, 132 F.3d 463 (9th Cir. 1997)); *see also Franzen v. Brinkman,* 877 F.2d 26, 26 (9th Cir. 1989) ("[A] petition alleging errors in the state post-conviction review process is not addressable through habeas corpus proceedings."); *see also Silversky v. Frink*, 500 F. App'x 625, 626 (9th Cir. 2012) ("A federal habeas petition is not the proper vehicle for addressing the adequacy of process provided to [petitioner] in state post-conviction proceedings.") Petitioner's allegations in Grounds Five and Seven regarding the evidentiary hearing in PCR Court are entirely related to the state post-conviction proceedings. Because challenges to state post-conviction proceedings are not cognizable on federal habeas review, *see Franzen,* 877 F.2d at 26, the alleged errors in Grounds Five and Seven are not reviewable by this Court.

### 5. Ground Six

Petitioner argues in Ground Six[10] of his Petition that he was denied due process under the Fourteenth Amendment because he was "improvidently convicted with insufficient real evidence . . . based on altered evidence and suborned perjury by a police officer." (Doc. 1 at 11.) Petitioner argues the following evidence used or allowed was not "actually relevant to the matter[:]" (1) the confession; (2) the documents relevant to measuring Arizona Department of Transportation's ("ADOT") losses; and (3) "the photographs," for example photographs of the truck, the spools of wire, and tire tracks. (*Id.* at 11, 42.) Petitioner avers that he presented the issues raised in Ground Six to the Arizona Court of Appeals on direct appeal and to the Arizona Supreme Court. (*Id.* at 11.)

Respondents argue in their Response that Petitioner's claim in Ground Six is technically exhausted but procedurally defaulted because he failed to fairly present this claim to the state courts in either his direct appeal or his PCR proceeding. (Doc. 14 at 15-16.) Regarding the direct appeal, Respondents aver that Petitioner did argue that the State had not presented sufficient evidence, but did not allege that the evidence had been falsified

---

[10]    Undersigned notes that there are significant overlapping facts alleged between Ground One and Ground Six. (*Compare* Doc. 1 at 6 *with* Doc. 1 at 11.) However, Ground Six does allege some additional challenges to Petitioner's conviction that are not present in Ground One. (*See id.*) Therefore, the Court will address the Grounds separately.

or that the officer had committed perjury. (*Id.* at 15.) "More importantly, [Petitioner] did not allege a Fourteenth Amendment due process violation" in connection with these arguments in his direct appeal. (*Id.* at 15-16.) Similarly, Respondents argue, Petitioner did not allege in his PCR petition that his conviction was based on insufficient or falsified evidence in violation of his Fourteenth Amendment due process rights. (*Id.* at 16.) Respondents argue that the Court of Appeals did not address the claim on the merits when they denied the Petition for Review, because the Court of Appeals found "insufficiency of the evidence is not a ground for relief" under Rule 32. (*Id.* (citing Doc. 14-4 at 62.)) Thus, Respondents aver, Claim Six is procedurally defaulted but technically exhausted, because Petitioner cannot return to state court to exhaust the claim. (*Id.*)

Petitioner has challenged the sufficiency of the evidence against him at several points throughout his post-conviction proceedings. In his direct appeal, Petitioner argued that "there was no probative evidence presented to prove beyond a reasonable doubt that [Petitioner] committed the offenses[.]" (Doc. 14-1 at 39.) In his Petition for Review to the Court of Appeals, Petitioner argued that "the evidence was insufficient for a valid conviction[,]" that the state "misled the jury and the court[,]" and that the "testimonial evidence used to convict was perjurious[] and the documentary evidence used to convict was misrepresented[.]" (Doc. 14-3 at 58-59.) Finally, in his Petition for Review to the Arizona Supreme Court, Petitioner argued that the "[e]vidence was insufficient for a conviction," "[t]he State misrepresented the dates of the crimes[,]" "[t]he State misrepresented Petitioner's jail call as a 'confession,'" and "[t]he State suppressed any and all evidence that exculpated Petitioner and/or that inculpated and/or impeached the State's witnesses[.]" (Doc. 14-5 at 67, 72-74.) While Petitioner alleged several challenges to the trial evidence presented throughout his appeal and PCR proceedings, Petitioner failed to allege any Constitutional or federal law violations in connection with these evidentiary issues. (*See* Doc. 14-1 at 39; Doc. 14-3 at 58-59; Doc. 14-5 at 67, 72-74.) Because Petitioner must "make the federal basis of the claim explicit[,]" his claims in Ground Six have not been properly exhausted in state court. *See Insyxiengmay*, 403 F.3d at 668.

However, since Petitioner is now precluded from bringing his claims in state court, Petitioner's Ground Six claims are technically exhausted but procedurally defaulted. *See Date*, 619 F. Supp. 2d at 764.

6.  Summary of Grounds One, Two, Three, Four, Five, Six, and Seven

To summarize, Grounds One, Two, Three, Four, and Six have not been exhausted in state court because either Petitioner did not raise the issue at all, or did not raise the federal basis of the issue, in his direct appeal or Rule 32 petitions. Because Petitioner is precluded from returning to state court to raise these claims, *see* Ariz. R. Crim. P. 32.4(b)(3), the claims are technically exhausted but procedurally defaulted. *See Beaty,* 303 F.3d at 987. Grounds Five and Seven of the Petition are not cognizable on federal habeas review, as they raise objections to the state PCR proceedings. *See Franzen,* 877 F.2d at 26. Undersigned therefore considers below whether Petitioner can overcome the procedural default with regard to Grounds One, Two, Three, Four, and Six.

**III.    Actual Innocence**

As described *supra*, procedurally defaulted claims may be considered by this Court if a petitioner can establish that a fundamental miscarriage of justice would result from the denial of the petition. *See Coleman*, 501 U.S. at 750. Therefore, the Court will consider whether Petitioner has shown that a fundamental miscarriage of justice with respect to Grounds One, Two, Three, Four, and Six.

**A.  Legal Standard**

The "fundamental miscarriage of justice" exception is "explicitly tied" to the "petitioner's innocence." *Schlup v. Delo*, 513 U.S. 298, 321 (1995). To show a fundamental miscarriage of justice, or "actual innocence," a petitioner must demonstrate that "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley*, 523 U.S. at 623 (quoting *Schlup*, 513 U.S. at 327-328). The so-called "actual innocence gateway" requires petitioners to make a showing of actual innocence, which would allow a petitioner to "have his otherwise barred constitutional claim considered on the merits." *Herrera v. Collins*, 506 U.S. 390, 404 (1993). Under this

standard, "actual innocence" means "factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)).

The miscarriage of justice exception to procedural default "is limited to those *extraordinary* cases where the petitioner asserts his [actual] innocence and establishes that the court cannot have confidence in the contrary finding of guilt." *Johnson v. Knowles*, 541 F.3d 933, 937 (9th Cir. 2008) (emphasis in original) (citing *Schlup*, 513 U.S. at 317). "To be credible, such a claim [of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. Because of this requirement for new reliable evidence, "in virtually every case, the allegation of actual innocence has been summarily rejected." *Id.* (internal quotations omitted).

### B. Analysis

Petitioner's arguments regarding procedural default and actual innocence are somewhat convoluted and scattered throughout his filings with the Court. Petitioner repeatedly claims throughout his Petition and Reply that he is innocent. (*See, e.g.,* Doc. 1 at 8, 33, 35, 36, 49; Doc. 15 at 3, 5, 13.) Additionally, he argues in his Reply that his "'procedural defaults' if found to exist by this Court as alleged by Respondents are, per se, 'excused' because Petitioner is actually innocent and will be proven once the State, court, and/or Respondents cease unconstitutionally suppressing the [*Brady*] material[.]" (Doc. 15 at 3.) Petitioner also argues in his Petition that the recording of the jailhouse call "that remains unlawfully suppressed by the State is sufficient irrefuttable [*sic*] evidence to prove . . . that . . . Petitioner is actually innocent." (Doc. 1 at 35.) Petitioner continues that this "recording," of Petitioner's alleged jailhouse confession, constitutes new evidence "under Arizona law (F.R.E. Rule 302) because the State is still suppressing it." (*Id.*) Petitioner also cites to "R.S.C. Rule 42 [*sic*] ER 3.8 [*sic*]. *McQuiggin[] v. Perkins*, 569 U.S. 383, 395 (2013) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)); *House v. Bell*, 547 U.S. 518, 537 (2006); *Amadeo v. Zant*, 486 U.S. 214, 224-27 (1988)" to support this proposition.

(*Id.*)

Respondents briefly address the availability of excusing the procedurally defaulted claims in their Limited Answer. (Doc. 14 at 16.) Respondents argue that "[Petitioner] has not alleged, nor can he prove" actual innocence or cause for the procedural default. (*Id.*) Undersigned finds that, liberally construed, Petitioner has argued in his documents that the procedural default should be excused because he is actually innocent, and will therefore address the argument below. *See Woods v. Carey*, 525 F.3d 886, 889-890 (9th Cir. 2008) (extending the less stringent standards for pro se filings to habeas corpus petitions).

As outlined, *supra*, a petitioner alleging actual innocence to excuse procedural default must allege some new evidence exists in support of his claim. *See Schlup*, 513 U.S. at 324. While Petitioner alleges that the "jailhouse call" constitutes new evidence "because the State is still suppressing it[,]" the Court has located no authority to support that contention, including considering the citations purporting to support this argument in Petitioner's Reply. (*See* Doc. 1 at 35) (citing "F.R.E. Rule 302 . . . R.S.C. Rule 42 [*sic*] ER 3.8 [*sic*]. *McQuiggin[] v. Perkins*, 569 U.S. 383, 395 (2013) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)); *House v. Bell*, 547 U.S. 518, 537 (2006); *Amadeo v. Zant*, 486 U.S. 214, 224-27 (1988)).

In fact, *House* and *Schlup* suggest the opposite is true. "When confronted with a challenge based on trial evidence, courts presume the jury resolved evidentiary disputes reasonably so long as sufficient evidence supports the verdict. Because a *Schlup* claim involves evidence the trial jury did not have before it, the inquiry requires the federal court to assess how reasonable jurors would react to the overall, newly supplemented record." *House*, 547 U.S. at 538 (citing *Schlup*, 513 U.S. at 330). In the Ninth Circuit, a *Schlup* claim of innocence requires newly presented (rather than discovered) evidence. *Griffin v. Johnson*, 350 F.3d 956, 961-963 (9th Cir. 2003) (examining Supreme Court and Ninth Circuit precedent to determine that "habeas petitioners may pass *Schlup*'s test by offering "newly presented" evidence of actual innocence"). Courts in this District and the Ninth Circuit routinely reject evidence as "newly presented" if it was available at trial but not

- 26 -

introduced. *See, e.g., Chestang v. Sisto*, 522 F. App'x 389, 391 (9th Cir. 2013) (finding that evidence the defendant was aware of at the time of his guilty plea and sentencing was not "new evidence" because the defendant had knowledge of the evidence); *Torres Valenzuela v. Ryan*, No. CV-1701854-PHX-JJT-BSB, 2018 WL 6606252, at *12-13 (D. Ariz. May 24, 2018), *report and recommendation adopted sub nom. Valenzuela v. Ryan*, 2018 WL 6605842 (D. Ariz. Dec. 17, 2018) (finding that petitioners' own testimony and testimony of two alibi witnesses not presented at trial did not constitute "new evidence" under *Schlup* because it was available at the time of trial); *Machuca v. Robertson*, No. 217-CV-08592-JVS-KES, 2018 WL 5270493, at *13 (C.D. Cal. Aug. 29, 2018), *report and recommendation adopted*, 2018 WL 5270490 (C.D. Cal. Oct. 22, 2018) (holding that alibi evidence was not "new" under *Schlup* even though it was not presented at trial, because it was known and discussed at trial).

Here, while, according to Petitioner and the record, the "jailhouse call" recording was not submitted as an exhibit in trial, the call was available at trial. (*See* Doc. 1 at 6; Doc. 14-3 at 98-101, 103.) Petitioner, defense counsel, the trial court, and the jury were all aware of the existence of the recording, according to Petitioner's pleadings and the record provided by Petitioner. (*See id.*) Therefore, the purported "new" evidence does not qualify as "newly presented" evidence under the *Schlup* standard. *See Chestang*, 522 F. App'x at 391; *Torres Valenzuela v. Ryan*, 2018 WL 6606252, at *12-13; *Machuca,* 2018 WL 5270493, at *13. Because Petitioner has not adequately alleged that newly discovered evidence would excuse his procedurally defaulted claims pursuant to *Collins* and *Schlup,* undersigned will recommend Grounds One, Two, Three, Four, and Six[11] be denied.

## IV.    Leave to Amend

"[A] petition for habeas corpus should not be dismissed without leave to amend unless it appears that no tenable claim for relief can be pleaded were such leave granted."

---

[11]    The Court notes that Petitioner did not allege that he could excuse the procedural default with newly discovered evidence with regard to each individual, procedurally defaulted claim. (*See* Docs. 1, 15.) However, because Petitioner did not meet the standard to allege newly discovered evidence at the outset, the Court need not analyze whether the "actual innocence" excuse was pled with respect to each individual, procedurally defaulted claim.

*Jarvis v. Nelson*, 440 F.2d 13, 14 (9th Cir. 1971) (citations omitted). A petition for habeas corpus may be amended pursuant to the Federal Rules of Civil Procedure. 28 U.S.C. § 2242; Rule 12, Rules Governing Section 2254 Cases. Federal Rule of Civil Procedure 15(a) applies to a party's motion to amend a pleading in a habeas corpus proceeding. *James v. Pliler*, 269 F.3d 1124, 1126 (9th Cir. 2001); *see also* Local Rule of Civil Procedure ("LRCiv") 15.1. Leave to amend shall be freely given "when justice so requires." Fed. R. Civ. P. 15. A court may deny leave to amend if it finds undue delay, bad faith, repeated failures to cure deficiencies, undue prejudice to the opposing party, or futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962). "Futility of amendment can, by itself, justify the denial of a motion for leave to amend." *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). A claim can be futile when the legal basis is tenuous or when a petitioner has failed to exhaust state remedies. *Caswell v. Calderon*, 363 F.3d 832, 837 (9th Cir. 2004) (citations omitted).

Here, Petitioner has not requested that he be provided leave to amend should his Petition be deficient. (*See* Docs. 1, 15.) Even without that request, undersigned considers whether "justice so requires" leave to amend. *See* Fed. R. Civ. P. 15(a); *see also Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000) ("[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.") (citations omitted).

For the reasons described *supra*, Petitioner's claims in Grounds One, Two, Three, Four, and Six are technically exhausted but procedurally defaulted either because Petitioner did not raise the issue at all or did not raise the federal basis of the issue in his direct appeal or Rule 32 petitions. Petitioner cannot overcome the procedural default with these claims because he has not shown cause for the default and resulting prejudice or that a fundamental miscarriage of justice would result from the denial. *See Coleman*, 501 U.S. at 750. Thus, leave to amend for these claims would be futile, as no tenable claim for habeas corpus relief could be pleaded with regard to these claims. *See Jarvis*, 440 F.2d at 14. Additionally, Grounds Five and Seven of the Petition are not cognizable on federal habeas review, as

they raise objections to the state PCR proceedings. *See Franzen,* 877 F.2d at 26. Because there is no adequate legal basis for Grounds Five and Seven under 28 U.S.C. § 2254(a), leave to amend would be futile. *See Caswell,* 363 F.3d at 837. Accordingly, undersigned will recommend the Petition be denied without leave to amend.

## CONCLUSION

The Court concludes Petitioner is not entitled to relief on any ground raised in his habeas petition. The record is sufficiently developed, and undersigned does not find that an evidentiary hearing is necessary for resolution of this matter.[12] *See Rhoades v. Henry*, 638 F.3d 1027, 1041 (9th Cir. 2011). Similarly, undersigned does not find that a Certificate of Appealability is appropriate in the present matter.[13] Accordingly,

**IT IS THEREFORE RECOMMENDED** that the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** and **DISMISSED WITH PREJUDICE** and without leave to amend.

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **DENIED** because Petitioner has not shown jurists of reason would not find the procedural ruling debatable, and because Petitioner has not made a substantial showing of the denial of a constitutional right.

This Report and Recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment. The parties shall have fourteen days from the date of service of a copy of this

---

[12]    Undersigned notes that Petitioner requested an evidentiary hearing in his Reply. (Doc. 15 at 17-18.) ("Rule 8 allows for an Evidentiary Hearing, which should be provided once Respondents disclose the transcripts and recording.") Because the Court finds that the Grounds in the Petition are either procedurally defaulted or not cognizable, undersigned concludes that an evidentiary hearing is unnecessary. *See Schriro v. Landrigan,* 550 U.S. 465, 474 (2007) ("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."); *see also Totten v. Merkle*, 137 F.3d 1172, 1175-1176 (9th Cir. 1998).

[13]    In his Reply, Petitioner requested a Certificate of Appealability "if this Court denied the Writ and/or Petition, and requests this Court to review the above listed recording and transcripts before making any final determination in this matter." (Doc. 15 at 18.) Because Petitioner has not shown reasonable jurists would find the procedural ruling debatable, and because Petitioner has not made a substantial showing of the denial of a constitutional right, *see Slack v. McDaniel*, undersigned will recommend denying Petitioner's request. 529 U.S. 473, 483-484 (2000),

Report and Recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(b) and 72. Thereafter, the parties have fourteen days within which to file a response to the objections.

Failure to timely file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order of judgment entered pursuant to the Magistrate Judge's Report and Recommendation. *See* Fed. R. Civ. P. 72.

Dated this 12th day of February, 2026.

Honorable Alison S. Bachus
United States Magistrate Judge